# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KEENAN KING,

                Petitioner,                      Case Number: 2:11-cv-13676

v.                                          HON. VICTORIA A. ROBERTS

RAYMOND BOOKER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Keenan King filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. King is incarcerated at the Macomb Correctional Facility in New Haven, Michigan. He challenges his convictions for two counts of armed robbery, two counts of possession of a firearm during the commission of a felony, and unlawful imprisonment.

The Court denies the petition.

## I. Background

The Michigan Court of Appeals described the facts leading to King's convictions as follows:

> Defendant's convictions arose from a robbery at the home of Germaine Overton on March 25, 2007. Three intruders entered Overton's house shortly after Overton, Carita Keene, and Overton's two sons arrived home late that night. Overton identified one of the intruders as defendant. According to Overton, defendant and another intruder rushed at him and

knocked him to the ground. Defendant then hit Overton over the head with a gun and knelt over him, still holding the gun. While defendant and another man dragged Overton into the dining room and pointed a gun to his neck, a third intruder swung a gun at Keene to hit her, but she moved out of the way. Keene tried to escape with the two boys, but one of the intruders stopped them in the kitchen. The gunmen held Keene and the boys on the floor, against the wall, and demanded Keene's jewelry and cell phone. Defendant and his two accomplices then took Overton, Keene, and the two boys upstairs into a bedroom. They took Overton's jewelry and then searched his pockets, taking approximately $800 in cash.

Police officers investigating other activity on the street observed suspicious activity in Overton's house and went to investigate. Officer Ralph Morgan looked through a window and saw a person on the ground with another person kneeling over him and holding a gun. After the police knocked at the door, defendant gave his gun to another intruder and told Overton to get rid of the police. Defendant then escorted Overton downstairs. The officers eventually entered the house and arrested defendant. The other intruders apparently escaped through an upstairs window.

*People v. King*, No. 279809, 2008 WL 5197086, *1 (Mich. Ct. App. Dec. 11, 2008). The

Michigan Court of Appeals' recitation of the facts is presumed correct on habeas review.

*See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

## II. Procedural History

A jury convicted King in Jackson County Circuit Court of two counts of armed

robbery, two counts of assault with intent to rob, one count of unlawful imprisonment,

and two counts of possession of a firearm during the commission of a felony. The trial

court set aside the assault with intent to rob convictions, finding them to be  lesser-

included offense of armed robbery. On July 19, 2007, the trial court sentenced King to 18

to 40 years in prison for each of the armed robbery convictions and 8 to 15 years for the

unlawful imprisonment conviction, concurrent to one another and consecutively to two

2

concurrent two-year terms of imprisonment for the felony-firearm convictions.

King filed an appeal of right raising these claims through counsel and in an *pro per*

brief:

> I.      Mr. King is entitled to resentencing because he was denied effective assistance of counsel at sentencing when substitute counsel failed to object to the scoring of OV 7 and OV 16; alternatively the sentencing errors were plain.

> II.      The trial court violated Mr. King's right to be free from double jeopardy under the United States and Michigan Constitutions, where the court convicted and sentenced Mr. King for two counts of armed robbery and two counts of felony firearm for the same transaction.

> III.      Mr. King is entitled to resentencing where the court mis-scored offense variable 8 because the sentencing offense was unlawful imprisonment (kidnapping) in violation of Mr. King's state and federal due process right to sentencing based upon accurate information.

> IV.      The trial court erred in ordering defendant to pay restitution for expenses that were not proved by a preponderance to have directly resulted from his crime.

> V.      Defendant was denied his federal and state constitutional rights to an impartial jury drawn from a fair cross-section of the community where there was only one African American in the array from which his jury was selected due to the systemic exclusion of African-American residents of the county from circuit court jury service.

> VI.      Defendant was denied his right to a fair and impartial jury.

> VII.      The trial court reversibly erred by failing to hold a hearing regarding the impartiality of a juror.

The Michigan Court of Appeals affirmed King's convictions and sentences.

*People v. King*, No. 279809, 2008 WL 5197086 (Mich. Ct. App. Dec. 11, 2008).

King filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal, *People v. King*, 483 Mich. 980 (Mich. Apr. 28, 2009), and denied King's motion for reconsideration.  *People v. King*, 484 Mich. 874 (Mich. Aug. 6, 2009).

King then filed a motion for relief from judgment in the trial court.  He raised these claims:

I.      Defendant was denied his constitutional right to the effective assistance of counsel by his attorney's failure to advocate for his client undeflected by conflicting considerations, failure to investigate, failure to file pretrial motions, failure to present any meaningful defense, and other mistakes and omissions.

II.     Prosecutor denied defendant a fair trial by vouching for the credibility of the witnesses, misstating the evidence, and by going outside the scope of the case.

III.    King was denied a fair and impartial trial where the trial judge failed to control the trial proceedings and abused his discretion by allowing the prosecutor to vouch for the credibility of the witnesses, misstating the evidence, and going outside the scope of the case.

IV.     Order of restitution must be vacated or modified as Mr. King had no assets at the time of sentencing and currently has no assets and no ability to pay. Additionally, the Michigan Department of Corrections is not adhering to the court's order with regards to restitution.

V.      Substitute counsel's presence and performance at sentencing denied Mr. King his state and federal constitutional rights to effective assistance of counsel.

VI.     Mr. King was denied his state and federal right to the effective assistance of counsel on appeal due to appellate counsel's failure to raise a claim of ineffective assistance of trial counsel in addition to the issues raised herein.

The trial court denied the motion.  *People v. King*, No. 07-003708-FC (Jackson

4

County Cir. Ct. March 5, 2010). The Michigan Court of Appeals and Michigan Supreme

Court each denied King's applications for leave to appeal the denial of his motion for

relief from judgment. *People v. King*, No. 299794 (Mich. Ct. App. Nov. 18, 2010);

*People v. King*, 489 Mich. 971 (Mich. June 28, 2011).

King then filed this habeas petition. He raises these claims:

1.  Mr. King is entitled to resentencing because he was denied effective assistance of counsel at sentencing when substitute counsel failed to object to the scoring of OV 7 and OV 16; alternatively the sentencing errors were plain.

2.  The trial court violated Mr. King's rights to be free from double jeopardy where the court convicted and sentenced Mr. King for two counts of felony-firearm for the same transaction.

3.  Mr. King is entitled to resentencing where the court mis-scored offense variable 8 because the sentencing offense was unlawful imprisonment (kidnapping) in violation of Mr. King's state and federal due process right to sentencing based upon accurate information.

4.  Defendant was denied his federal and state constitutional rights to an impartial jury drawn from a fair cross-section of the community where there was only one African-American in the array from which his jury was selected due to the systemic exclusion of African-American residents of the county from circuit court jury service.

5.  Substitute counsel's presence and performance at sentencing denied Mr. King his state and federal constitutional rights to effective assistance of counsel.

6.  Mr. King was denied his state and federal right to the effective assistance of counsel on appeal due to appellate counsel's failure to raise a claim of ineffective assistance of trial counsel in addition to the issues raised herein.

7.  Defendant was denied his constitutional right to the effective assistance of counsel by his attorney's failure to advocate for his client undeflected by conflicting considerations, failure to investigate, failure to file pretrial

5

motions, failure to present any meaningful defense, and other mistakes and omissions.

8.     Prosecutor denied defendant a fair trial by vouching for the credibility of the witnesses, misstating the evidence, and by going outside the scope of the case.

9.     King was denied a fair and impartial trial where the trial judge failed to control the trial proceedings and abused his discretion by allowing the prosecutor to vouch for the credibility of the witnesses, misstating the evidence, and going outside the scope of the case.

10.    Order of restitution must be vacated or modified as Mr. King had no assets at the time of sentencing and currently has no assets and no ability to pay. Additionally, the Michigan Department of Corrections is not adhering to the court's order with regards to restitution.

11.    Defendant was denied his right to a fair impartial jury.

12.    The trial court reversible erred by failing to hold a hearing regarding the impartiality of the juror.

### III.  Discussion

### A.  Standard of Review

The petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in

7

the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

8

Cir. 1998).

### B.  Claims One and Five: Ineffective Assistance of Counsel at Sentencing

King argues that his attorney rendered ineffective assistance at sentencing in failing to object to offense variables 7 and 16.  The relevant sentencing statute directs 50 points be scored under OV 7 in cases of "aggravated physical abuse."  Mich. Comp. Laws § 777.37(1).  Aggravated physical abuse occurs when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  *Id.*  King further argues that the trial court erred in scoring five points for OV 16 because this offense variable applies only to crimes against property, not crimes against people.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held, on direct review, that King's conduct was excessively cruel, harsh, and severe, justifying the scoring of 50 points for OV 7. *King*, 2008 WL 5197086 at *2. The state court also held that counsel was not ineffective for failing to object to the scoring of OV 7 because it was correctly scored. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). "[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Given that the Michigan Court of Appeals held that offense variable 7 was correctly scored under Michigan law, King's attorney was not ineffective in failing to raise a futile objection. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

King also challenges the scoring of offense variable 16. He argues that points

10

should be scored for this offense variable only for crimes against property, not crimes against people.  The Michigan Court of Appeals held that the trial court erred in scoring five points for OV 16 because armed robbery is a crime against a person, not property, but that the error was harmless because a five-point reduction in King's total offense variable score would not affect the guidelines range.  *King*, 2008 WL 5197086 at *3. Additionally, the Michigan Court of Appeals held that because King was not prejudiced by defense counsel's failure to object, defense counsel was not ineffective in failing to object.  *Id.*  This Court must defer to the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Because the state court found only harmless error in the scoring of the guidelines, defense counsel was not ineffective for failing to object to the guidelines.  Habeas relief is denied on this claim.

## C. Claim Two: Double Jeopardy Violation

King argues that his convictions for two counts of armed robbery and two counts of felony firearm violated the Double Jeopardy Clause because they arose from the same transaction.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (internal citations omitted). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes prescribe the 'same' conduct, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). In determining whether the Michigan legislature has intended to authorize cumulative punishments in the circumstances presented here, this Court is "bound by a state court's determination of the legislature's intent." *Banner v. Davis,* 886 F.2d 777, 779-80 (6th Cir. 1989); *see also*

12

*McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005) (holding that a federal court is "bound by" state court's interpretation of legislative intent).

The Michigan Court of Appeals has concluded that multiple armed robbery and felony-firearm convictions do not violate the Double Jeopardy Clause because the legislature intended to impose multiple punishments in circumstances involving multiple victims. *People v. Wakeford*, 418 Mich. 95, 111-12 (Mich. Ct. App. 1983). In this case, the Michigan Court of Appeals held that because the crimes were committed against two different victims and each victim was robbed at gunpoint, no double jeopardy violation occurred.

Accepting, as the Court must, the state court's interpretation of legislative intent, the Court finds that King's convictions do not violate the Double Jeopardy Clause. As evidenced by the decision in *Wakeford*, the Michigan courts have ruled that the Michigan Legislature intended to impose multiple punishments where a defendant engages in conduct that has multiple victims. The determination by the Court of Appeals is supported by the evidence and legal authority discussed above. Thus, King was not subjected to multiple punishments for a single criminal act, but was instead subjected to multiple punishments for multiple criminal acts. This does not offend the Double Jeopardy Clause. *See, e.g., United States v. Redditt*, 87 F. App'x 440, 447 (6th Cir. May 21, 2003) (the Double Jeopardy Clause is not violated where a defendant receives multiple punishments for committing separate criminal acts because he or she was not subjected to multiple sentences for the same offense). The Court denies habeas relief on this

claim.

### D.  Claim Three: Scoring of Offense Variable 8 Based Upon Inaccurate Information

King claims that offense variable 8 was scored based upon inaccurate information because, under Mich. Comp. Laws § 777.38(1)(a), no points are to be scored if the sentencing offense is kidnapping.  King argues that unlawful imprisonment is a form of kidnapping and no points should therefore have been scored for that offense.

A sentence violates due process if it is based on "misinformation of constitutional magnitude[,]" *Roberts v. United States*, 445 U.S. 552, 556 (1980), or "extensively and materially false" information, which the defendant had no opportunity to correct.  *Townsend v. Burke*, 334 U.S. 736 (1948).  "*Townsend* and its progeny are generally viewed as having established a due process 'requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.'"  *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (quoting *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974)).

King disagrees with the trial court's scoring of this offense variable, but has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct.  *Townsend*, 334 U.S. 736, 741 (1948).  The trial court's determination of the facts was reasonable.  28 U.S.C. § 2254(d)(2).  The Michigan Court of Appeals held that the offense variable was correctly scored under Michigan law.  In addition, his sentences are within the statutory maximum penalty for armed robbery (life) and unlawful imprisonment (15 years).  Mich. Comp. Laws § § 750.317 & 750.349b.  Accordingly, no deprivation of due process occurred, and King is not entitled to habeas relief on the basis of this claim.

14

### E.  Claim Five: Denial of Right to Impartial Jury Drawn from Fair Cross-Section

King claims that his right to an impartial jury drawn from a fair cross-section of the community was violated because there was only one African-American person in the array from which his jury was selected.

The Sixth Amendment guarantees a defendant the right to a jury venire that is "designed to represent a fair cross section of the community."  *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979).  To establish a prima facie violation of the fair-cross-section requirement, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, *citing Taylor v. Louisiana*, 419 U.S. 522 (1975).  "The Sixth Amendment guarantees only the opportunity for a representative jury, not a representative jury itself."  *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012).  King bears the burden of establishing each element of the prima facie fair-cross section claim, including underrepresentation and systematic exclusion.  *See Berghuis v. Smith*, 559 U.S. 314, 332 (2010); *Duren*, 439 U.S. at 364.

King fails to establish a prima facie fair cross-section claim.  He bases his claim solely on the fact that there was a single African-American person on the jury venire from which his jury was drawn.  It is well-established that "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion."  *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir. 1989).  *See also United States v. Orange*, 49 F. App'x 815, 817 (10th Cir. Oct. 18, 2002) (holding that evidence of a discrepancy on a single venire panel is insufficient to demonstrate

systematic exclusion); *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001).

 The Michigan Court of Appeals denied King's claim, finding that he failed to identify "any evidence suggesting that any underrepresentation of African-Americans in his particular jury was due to systematic exclusion."  *King,* 2008 WL 5197086 at *5.  King has presented no evidence that other venires did not include a fair representation of African Americans, or that the method used to draw the jury pool was designed to exclude African Americans.  Accordingly, the Michigan Court of Appeals's rejection of his claim was a reasonable application of *Duren.*

**F.  Claims Six and Seven: Ineffective Assistance of Trial and Appellate Counsel**

Defendant argues that he was denied his constitutional right to the effective assistance of counsel by his attorney's failure to: request a continuance to allow him to locate and call as witnesses two co-defendants; impeach Germaine Overton's testimony; or object to vague and incorrect jury instructions.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, King argues that his attorney should have requested a continuance to allow him to locate and call as witnesses two men, Harold James Cargill and Brack Lorenzo Rucker.  King identifies these two men as his co-defendants and claims that if they had been called to testify the outcome of his trial would have been different because he would have presented an entirely different trial strategy.  King fails to identify what this different trial strategy would have been.  In addition, King testified for the prosecution at Cargill's trial and admitted to joining Cargill and Rucker in the robbery.  *See Cargill v. Rapelje*, No. 2:11–CV–11360, 2012 WL 6808514, *2 (E.D. Mich. Nov. 30, 2012).  Thus, it is apparent that neither Cargill's nor Rucker's appearance at trial would have aided the defense.

King next argues that counsel was ineffective for failing to impeach Overton's testimony, which, King claims, was rife with inconsistencies.  King fails to identify specific areas of cross-examination that counsel failed to explore or to identify specific questions counsel should have asked but did not.  The trial transcript shows that defense counsel cross-examined Overton regarding apparent inconsistencies in his testimony.  King's conclusory allegation that counsel

17

could have done more is insufficient to warrant habeas relief.

Finally, King argues that counsel was ineffective in failing to object to vague and incorrect jury instructions. King's argument, however, fails to identify which jury instructions were inadequate or in what way the instructions were incorrect. The Court will not create an argument for him. His conclusory claim is insufficient to warrant habeas corpus relief.

### G.  Claim Eight: Prosecutorial Misconduct

King argues that habeas relief should be granted because the prosecutor committed misconduct. King contends that the prosecutor vouched for the credibility of prosecution witnesses, misstated the evidence, and referred to evidence outside the scope of the case. Respondent argues these claims are procedurally default. The Court finds it unnecessary to address the question of procedural default, it is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this issue, and it is more efficient to proceed directly to the merits.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974)).  This Court must ask whether the Michigan Court of Appeals' decision denying King's

prosecutorial misconduct claim "'was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __,

131 S. Ct. at 786-87.

King points to only one passage in the transcript to support his prosecutorial misconduct

claim.  He argues that the following portion of the prosecutor's argument was inappropriate:

> Again, look at their testimony.  Look at how they testified.  They did not have –
> Alizae did hesitate with regards to whether or not Keenan King was that person.
> Kavaciae did not.  He did not attempt to struggle or search for particular answers
> when asked by the defense attorney questions.  His credibility is – is high, and
> you have to give it a significant amount of credibility especially when you
> compare it with what everyone else had to say.

Tr. 6/11/07 at 327.

King raised his prosecutorial misconduct claims on collateral review.  The trial court,

although finding the claim defaulted, considered the merits of the claims and found them

lacking.  This Court agrees.

Prosecutors may not vouch for a witness's credibility.  Prosecutorial vouching and an

expression of personal opinion regarding the accused's guilt "pose two dangers: such comments

can convey the impression that evidence not presented to the jury, but known to the prosecutor,

supports the charges against the defendant and can thus jeopardize the defendant's right to be

tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion

carries with it the imprimatur of the Government and may induce the jury to trust the

Government's judgment rather than its own view of the evidence."  *United States v. Young*, 470

U.S. 1, 18-19 (1985).  In this case, the prosecutor's arguments explored the evidence presented at

trial, the demeanor of witnesses and argued that these factors supported Kavaciae's credibility. The prosecutor did not imply any special knowledge about Kavaciae's veracity. He simply argued that the evidence supported a finding that Kavaciae was credible. The argument was not improper.

King's argument that the prosecutor misstated evidence and went outside the scope of the case is unsupported by any specific allegations or reference to the record. The Court finds that the state court's denial of these claims as vague and unsupported, is a reasonable application of *Darden*.

### H.  Claim Nine: Trial Court Failed to Control the Proceedings

King argues that habeas relief should be granted because the trial court's failure to control the proceedings denied him his right to a fair trial. Specifically, he alleges that the trial court failed to prevent the prosecutor from vouching for witnesses and failed to give a curative instruction regarding the prosecutor's misconduct. As discussed above, King has not shown that the prosecutor engaged in misconduct. King also fails to specify any other way the trial court purportedly failed to control the proceedings. This claim is without merit.

### I.  Claim Ten: Improper Order for Restitution

King argues that the trial court erred in directing him to pay $800 in restitution. Mich. Comp. Laws § 780.766 provides that a "court shall order . . . that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction." King argues that the court incorrectly imposed restitution without assessing his ability to pay or substantiating the amount of loss sustained by the victims.

Subject matter jurisdiction exists under § 2254 "'only for claims that a person is 'in

20

custody in violation of the Constitution or laws or treaties of the United States.'" *Washington v. McQuiggin*, 529 F. App'x 766, 772 (6th Cir. July 11, 2013) (quoting *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000); 28 U.S.C. § 2254(a)).  Restitution orders generally "fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim." *Id.*  A federal court does not obtain jurisdiction over a challenge to a restitution order merely because the petitioner is in custody at the time he files his claim. There must be "a nexus between the petitioner's claim and the unlawful nature of the custody." *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010).  A restitution order "falls outside . . . the margins of habeas . . . because it is not a serious restraint on . . . liberty as to warrant habeas relief." *McQuiggin*, 2013 WL 3466439 at *5.  Where a petition raises a challenge to a restitution order, the district court must dismiss that portion of the petition for lack of subject matter jurisdiction.  *Id.* at *6.

The Court lacks jurisdiction to address this claim; it does not relate to King's custody.

### J.  Claims Eleven and Twelve: Denial of Right to a Fair and Impartial Jury

King's eleventh and twelfth claims concern his argument that he was denied his right to a fair and impartial juror because a juror who admitted to having previously having had a conversation with Overton was permitted to remain on the jury and the trial court failed to conduct an adequate inquiry into the allegations of improper contact.[1]  The Michigan Court of Appeals summarized the circumstances of the alleged impropriety as follows:

After the jurors were selected, but before they were administered their oath, the

---

[1]  Respondent argues that these claims are procedurally defaulted.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of King's claims.  *Hudson,* 351 F.3d at 215.

prosecutor revealed that Overton had disclosed that he may have had a conversation about the case with one of the prospective jurors. The trial court agreed to question the juror and the following exchange occurred:

Q.      [T]he prosecutor is indicating that Mr. Overton had indicated maybe he had spoke to you about the case?

A.      Um no, not really.

Q.      All right. You don't recall anything about being told anything about the facts-

A.      Hum-um

Q.      -either from him or anybody else?

A.      No. Yeah, I heard about it on the streets.

* * *

Q.      And you'll be able to put that out of your mind, and upon deliberating in this matter, only consider what comes to you in the course of this trial, right?

A.      Yes.

The juror further stated that she "just heard that it had happened," and denied hearing any specific details. When defense counsel asked the juror whether she had any conversation with Overton in which the robbery was mentioned, the juror denied this. The trial court commented, "I don't see any big problem based on what you've said. She can listen to what goes on here. So we'll proceed with the twelve that we have."

*King,* 2008 WL 5197086 at *5.

The Michigan Court of Appeals concluded that the allegations failed to show that the

juror's impartiality was influenced by any extraneous influence:

In this case, upon inquiry by the trial court, the juror denied having a conversation about the case with Overton, and indicated that she had only heard "on the streets" that it had happened, but did not hear any of the details. The juror indicated that she could set aside what little she had heard and decide the case only on the evidence presented at trial. In light of the juror's responses, there is no basis for concluding that the juror's prior exposure to information would cloud her impartiality, or that there is a real and substantial possibility that the jury's

22

verdict was tainted by extraneous influences.  Further, we are satisfied that the trial court made an appropriate inquiry.  Both parties were apparently satisfied with the juror's responses and did not request any further inquiry.  Accordingly, the trial court's failure to declare a mistrial or investigate the matter further was not plain error.

*King*, 2008 WL 5197086 at *6.

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors.  *Irvin v. Dowd*, 366 U.S. 717 (1961).  The right to due process, however, does not necessarily require a new trial in every instance in which a juror is potentially biased.  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Id.*

"As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial."  *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citations omitted), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003).  "Thus, under clearly established federal law, jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, . . . and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA."  *Fletcher v. McKee*, No. 08-1240, 2009 WL 4755293, *3 (6th Cir. Dec. 11, 2009).

The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences.  *Remmer v. United States*, 347 U.S. 227, 229-230 (1954).  The Sixth Circuit Court of Appeals has held that a *Remmer* hearing is required "in all cases involving an

unauthorized communication with a juror or the jury from an outside source that presents a

likelihood of affecting the verdict." *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995).

*See also Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir.1999) ("When a trial court is presented

with evidence that an extrinsic influence has reached the jury which has a reasonable potential

for tainting that jury, due process requires that the trial court take steps to determine what the

effect of such extraneous information actually was on that jury."); *overruled on other grounds by*

*Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). Absent an outside influence on a juror or the

jury, the need for a *Remmer* hearing does not arise. *United States v. Frost*, 125 F.3d 346, 377

(6th Cir. 1997).

The record shows that after the trial court learned about Overton's alleged contact with a

juror, the trial court questioned that juror individually. The juror denied discussing the case with

Overton and said that she could and would decide based upon the evidence presented in court. A

juror's statements regarding his or her own impartiality may be given great weight by a trial

court judge in determining impartiality because "surely one who is trying as an honest man to

live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a

certain matter." *Remmer*, 347 U.S. at 217 n.7 (internal quotation omitted). The trial court

credited the juror's testimony that she would not be influenced by any extraneous contact. King

has failed to present any evidence or argument which would rebut the presumption that the state

court's finding was correct. In addition, King failed to show the state court's inquiry lacked

breadth and depth. The prosecutor and defense counsel were present at the hearing. The

juror was placed under oath before to being questioned. The trial court inquired about the

juror's alleged contact with Overton and the juror's ability to consider only the evidence

presented at trial.  King fails to show any deficiencies in the inquiry.  This Court cannot say that the state court's handling of the matter was contrary to or an unreasonable application of Supreme Court precedent; habeas relief is denied.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  The Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court denies a certificate of appealability.

## V.  Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus and a certificate of appealability are DENIED; this matter is DISMISSED WITH PREJUDICE.

**IT IS ORDERED.**

25

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: June 10, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record and Kennan King by electronic means or U.S. Mail on June 10, 2014.

S/Carol A. Pinegar
Deputy Clerk

26